[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION FOR ATTORNEY'S FEES AND COSTS
The jury returned a verdict in the amount of $127,000 in favor of the plaintiff, including $91,000 for back and front pay and $36,000 in punitive damages. The jury found that the defendant employer retaliated against the plaintiff employee for "whistle-blowing" and for exercising protected fights pursuant to §§ 31-51m and 31-51q of the General CT Page 13458-j Statutes, respectively. Both statutes provide for the allowance of "reasonable attorney's fees"[1] and costs for the prevailing plaintiff. The plaintiff has submitted a motion for attorney's fees totaling $84,125.00. The defendant has argued that the documentation does not support the full amount requested; the defendant further suggests that the existence of a one third contingency fee agreement eliminates the need to award fees on the basis of the amount of time spent on the file.
In support of its position that the contingency fee agreement should be enforced, such that the award of attorney's fees would amount to $42,333.33, the defendant refers to Sorrentino v. All Seasons Services,Inc., 245 Conn. 756 (1998). Sorrentino was an action brought pursuant to § 31-290a of the General Statutes, which prohibits retaliation by an employer against an employee for having brought a workers' compensation claim and requires the imposition of "reasonable attorney's fees" and costs in favor of a prevailing plaintiff. The jury apparently awarded the plaintiff approximately $146,000. The hourly billing records totaled approximately $64,000. The trial court awarded $30,000, on the ground of duplicate billing and the like. The contingency fee agreement would have resulted in a fee of approximately $48,600. The plaintiff claimed on appeal that the contingency fee agreement was reasonable and that it should control the award of fees.
The Supreme Court agreed with the plaintiff. Where a contingency fee agreement exists, the questions for resolution are whether the fee agreement is reasonable and, if the trial court does not enforce the fee agreement, whether the trial court properly exercises discretion in departing from the terms of the agreement. Id., 774. The court referred to the standards of Rule 1.5(a) of the Code of Professional Responsibility[2] in its assessment of reasonableness and decided that the fee agreement in this instance was reasonable. The court held (at 776) that the trial court should not depart from the terms of a reasonable fee agreement in the absence of a persuasive demonstration that enforcing the agreement would result in substantial unfairness.
In other contexts, courts have specifically discountenanced the use of the contingency fee in setting attorney's fees. In Blanchard v.Bergeron, 489 U.S. 87, 91-96 (1989), the United States Supreme Court overruled the dictum, if such is possible, in Johnson v. Georgia HighwayExpress, Inc., 488 F.2d 714 (5th Cir. 1974), to the effect that contingency fee agreements capped the amount of recovery of attorney's fees in civil rights actions. The Supreme Court held in Blanchard that the presence of a contingency fee was but one factor to consider in the CT Page 13458-k assessment of attorney fees, and the proper measure was what was a reasonable fee in the circumstances. The starting point, and most often also the ending point[3], was the lodestar number, reached by multiplying the number of hours reasonably spent times a reasonable hourly rate; that rate is subject to adjustment by application of theJohnson factors. The court noted that the trial court should not be limited in its assessment of what was reasonable by an agreement of the parties.[4]
Connecticut courts have also relied on the Johnson approach, especially in the context of attorney's fees assessed pursuant to the Connecticut Unfair Trade Practices Act (CUTPA). A significant qualification, however, is the language in § 42-110g (d), which provides for attorney's fees for the successful pursuit of CUTPA claims. The section specifically and expressly provides that attorney's fees are not to be based on the outcome of the case, and it would appear, then, that any contingency fee arrangement should not be considered as a significant factor. See, e.g., Steiger v. JS Builders, 39 Conn. App. 32, 38-39
(1995); Riggio v. Orkin Exterminating Co., 58 Conn. App. 309, 318
(2000). Sections 31-51m and 31-51q, by contrast, contain no such qualification, and refer only to reasonable attorney's fees. Authority applying the CUTPA language is, then, of limited relevance to the issue at hand.
We are left, then, in this case, with one figure reached by the lodestar calculation with adjustments and a second somewhat lower, but still substantial, figure reached by application of the contingency fee agreement between attorney and client. The application of either number fulfills a primary purpose of the imposition of attorney's fees, which is to ensure that the individual party receives the full amount of damages awarded. The individual plaintiff presumably has no obligation to pay his attorney more than the amount calculated by applying the terms of the contingency fee agreement. I feel constrained to follow our Supreme Court's language in Sorrentino, which is quite clear and unambiguous, and first to inquire whether the contingency fee is reasonable in this case. I have examined the factors in Rule 1.5(a), including the time and labor required, the novelty and difficulty of the questions involved, the skill needed to perform the services properly, the fee customarily charged in the locality for such services, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, and the contingent nature of the fee. I do not consider the likelihood of preclusion of other employment by the lawyer, any time limitations imposed by the client or the nature and length of the attorney-client relationship, because there was either no information available as to CT Page 13458-l those factors or they were immaterial to the question considered. In the circumstances, it cannot be said that the contingent fee agreement is unreasonable: although more time and effort probably were expended than is reflected in the fee resulting from the application of the fee agreement, some of the time was not spent in successful efforts, in that, at a minimum, two of the four counts did not reach the jury, the case against one of the two defendants was dismissed entirely, and the trial was protracted by counsel's lengthy examinations.[5] Some of the legal questions were of moderate difficulty, and the defense counsel's skill necessitated considerable research. The amount involved was moderate and the results obtained were reasonably good. The plaintiff and his attorney bargained for the contingency fee, and in the circumstances it would appear to be reasonable. By the very nature of contingency fee arrangements, there will at times by superficial overpayment and at times superficial underpayment, and Sorrentino compels me not to depart from the contingency fee agreement unless it, in the circumstances, appears not to be reasonable.
If the lodestar approach were used, the result would not be markedly different. The plaintiff submitted documentation showing a total of 89 hours spent before trial and claiming an hourly rate of $175.00. During the trial period, the plaintiff's attorneys spent 342.75 hours at $200.00 per hour. The total amount claimed is $84,125.00. As noted above, however, some of the effort was unsuccessful and, in my observation of the trial, I believed that portions of the trial were unnecessarily protracted. The trial was only partially successful, in that two of the four counts did not reach the jury and the case was dismissed as to one of the defendants. No differentiation was made in rates between Mr. Cicchiello, the lead counsel, and Ms. Buden, the associate who performed research and argued legal issues orally.[6] The records submitted do not appear to be actual billing records; rather, they appear to be compilations and, in regard to many entries, estimates. If I were to apply the Johnson factors to the lodestar — and I would reduce the composite billing rate by $25.00/hour — I would conclude that an attorney's fee of $50,000 would be reasonable. The contingency fee agreement is not greatly different from this sum, so there would appear to be no great injustice, and within the exercise of a reasonable discretion, to enforce the agreement between the parties. I award, then, an attorney's fee of $42,333.33.
Finally, I turn to the question of costs. The theoretical difference between the parties is whether the award of costs is governed by the usual statutory standards, specifically §§ 52-257 and 52-260 of the General Statutes, or by the language of §§ 31-51m and 31-51q of the CT Page 13458-m General Statutes, which, as noted above, mention as items for recovery reasonable attorney's fees and costs. I believe that the inclusion of costs in the statutes creating the causes of action leads to the conclusion that something other than the ordinary statutory taxable costs was contemplated by the legislature: otherwise, the addition of the term "costs" is meaningless. It also seems consistent with the allowance of attorney's fees to shift the payment of reasonable costs to the defendant to further the plain legislative goal of making the successful plaintiff truly whole. This does not mean, of course, that all costs are automatically shifted without some scrutiny to determine reasonableness. See, e.g., Citino v. City of Hartford Redevelopment Agency,2000 Ct. Sup. 9931 (L. Sullivan, J., 2000).
The objections to the plaintiff's second amended bill of costs, dated August 2, 2001, are decided as follows. The defendant has objected to the amount of $286.20 for the cost of the sheriff's service of subpoenas for trial. It is clear from the supporting documentation that the amount of $286.20 actually represents the cost of the service of subpoenas and the cost of serving the complaint. Because these were legitimate out-of-pocket expenses, they are awarded as costs.
The costs of the deposition transcripts of Merrill and Serra are supported by documentation and were reasonably necessary at trial. They are allowed. The plaintiff also claims as costs the cost of the transcript of Serra's trial testimony in the amount of $570.49. Although some portion of the transcript may have been helpful to the plaintiff, the use of the transcript was more a luxury than a necessity and I do not think it reasonable to transfer its cost to the defendant. The plaintiff claims $6,479 for the expert fees of the economist Dr. Wright. The invoices submitted in support of the claim indicate that approximately half of the amount was for pretrial events and half for trial testimony. The defendant's only objection is on the ground that there is no statutory provision for the transfer of the cost; but, as noted above, I believe that §§ 31-51m and 31-51q contemplate the transfer of reasonably incurred costs to the successful plaintiff. I will allow the cost of $6,479.
Finally, the defendant objects to the claim of the plaintiff for "copy/mail/parking" in the amount of $283.10.[7] There is no documentation in support of the claim, nor any indication of what the mailing and copying is for. Parking is not a traditional expense of litigation which is usually transferred. The objection to this item is sustained. CT Page 13458-n
Costs, then, may enter according to the second amended bill of costs, as amended by the application of this decision.
Beach, J.